**JED RUBENFELD**
**(NY Bar # 2214104)**
**(pro hac vice forthcoming)**
**1031 Forest Rd.**
**New Haven, CT 06515**
**Telephone: (203) 432-7631**
**E-mail: jed.rubenfeld@yale.edu**

**ROGER I. TEICH**
**California State Bar No. 147076**
**337 Liberty Street**
**San Francisco, CA 94114**
**Telephone: (415) 948-0045**
**E-Mail Address:  rteich@juno.com**

**Attorneys for Plaintiff American Values 2024**

**RICHARD JAFFE, ESQ.**
**California State Bar No. 289362**
**428 J Street, 4th Floor**
**Sacramento, California 95814**
**Tel: 916-492-6038**
**Fax: 713-626-9420**
**Email: rickjaffeesquire@gmail.com**

**Attorney for Plaintiff Robert F. Kennedy, Jr.**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT F. KENNEDY, JR., and AMERICAN VALUES 2024, *Plaintiffs*, | Case No.  _____ |
| -v.- | **VERIFIED COMPLAINT** |
| META PLATFORMS, INC., FACEBOOK OPERATIONS, LLC, INSTAGRAM, LLC, MARK ZUCKERBERG, and JOHN DOES 1-10, *Defendants*. | **Jury Trial Demanded** |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ROBERT F. KENNEDY, JR., and AMERICAN VALUES 2024, *Plaintiffs*, <br><br> -v.- <br><br> META PLATFORMS, INC., FACEBOOK OPERATIONS, LLC, INSTAGRAM, LLC, MARK ZUCKERBERG, and JOHN DOES 1-10, *Defendants*. | Case No. _____ <br><br> **VERIFIED COMPLAINT** <br><br> Jury Trial Demanded |

As and for their Complaint herein, Plaintiffs state and allege as follows:

1.      This is an election interference case.

2.      In violation of the First Amendment, of civil rights law dating back to the Civil War, and of the American people's fundamental right to a presidential election decided by voters, not by trillion-dollar corporations, the social media giant Meta Platforms is brazenly censoring speech by and supportive of Independent presidential candidate Robert F. Kennedy, Jr., and lying to the public about it.

3.      On May 3, 2024 Plaintiff American Values 2024 ("AV24"), a political action committee supporting Mr. Kennedy, released online a thirty-minute film called *Who Is Bobby Kennedy?*[1]

4.      The film offers a simple, honest look at Mr. Kennedy's life, formative experiences, accomplishments, character, and values, especially his belief in America and her founding

---

[1] The film can be viewed at www.whoisbobbykennedy.com.

principles, inviting voters to make up their own minds about Mr. Kennedy, rather than accepting falsehoods about him repeatedly asserted by major news outlets and social media platforms.

5.      Shortly after its release, *Who Is Bobby Kennedy* began trending on X, the social media site formerly known as Twitter.

6.      Meta, however, censored it, removing the film and blocking users on its platforms from watching, sharing, or even posting a link to it.

7.      Facebook and Instagram (both of which are owned by Defendant Meta Platforms, Inc.) sent users messages threatening to suspend their accounts or otherwise punish them if they sought to watch, share or even post a link to the film.

8.      And they made good on these threats, disabling and suspending users who did so.

9.      In addition, they widely disseminated falsehoods about *Who Is Bobby Kennedy*, stating for example that the film contained improper "sexual" content, that the film contained improper "violent" content, or that the film was "spam."

10.     When users tried to comment on this censorship and share those comments with others, those comments were removed as well.

11.     Defendants seem to believe that they can with legal impunity issue threats to their users and deploy their vast power of censorship, account-suspension, and deplatforming in order to favor or target the presidential candidate of their choice.

12.     Fortunately for the country, they are mistaken.

13.     Under the Support and Advocacy Clause of the Civil Rights Act of 1871, private companies and their officers and employees cannot in concert seek to prevent by force, threat or intimidation any citizen from engaging in lawful speech supporting or advocating the election of a presidential candidate. *See* 42 U.S.C. § 1985(3).

14.     Nor can they in concert seek to injure any citizen, whether the injury is to person or property, on account of having engaged in support or advocacy. *See* 42 U.S.C. § 1985(3).

15.     The Civil Rights Act of 1871 is one of the fundamental statutory guarantors of American democracy, and anyone who violates its provisions can be sued for both damages and injunctive relief.

16.     Moreover, anyone who knows that such violations are occurring and has the power to prevent those wrongs or aid in preventing them, but refuses or neglects to do so, is equally in violation of the Civil Rights Act of 1871 and equally liable. *See* 42 U.S.C. § 1986.

17.     Federal civil rights statutes that, like Section 1985, protect the right to participate freely in federal elections and prohibit private actors from conspiring to interfere in those elections by "threatening," "intimidating," or "injuring" citizens do not merely prohibit physical violence; they also prohibit the online dissemination of false statements intended to prevent or dissuade citizens from exercising their rights.

18.     In public, Meta declares: "We don't want to get in the way of open, public and democratic debate on Meta's platform—especially in the context of elections in democratic societies like the United States. The public should be able to hear what their politicians are saying . . . so that they can make informed choices at the ballot box."

19.     But in its behind-closed-door censorship decisions, Meta pursues a different agenda, tilting the playing field in favor of, at the behest of, and in collusion with the current Administration.

20.     Meta and the country's other dominant social media companies have done this for years—indeed from the earliest days of the Biden presidency—censoring millions of Americans, and specifically targeting Mr. Kennedy.

21.     This is no mere litigant's allegation; it is a fact established by copious discovery,

documentary evidence, and admissions made in Meta's own internal emails, as found by the

United States District Court of the Western District of Louisiana (the "District Court") and by

the United States Court of Appeals for the Fifth Circuit.[2]

22.     Mr. Biden was sworn into office on January 20, 2021. Barely two days later, "[a]t 1:04

a.m. on January 23, 2021, the White House flagged an anti-vaccine tweet by Robert F. Kennedy,

Jr. ('RFK Jr.') and instructed Twitter to 'get moving on the process for having it removed

ASAP.' . . .  Thus began a campaign of 'unrelenting pressure from the most powerful office in

the world' to 'bend [social-media platforms] to the government's will.'" Brief of Respondents at

3, Feb. 2, 2024, *Murthy v. Missouri*, No. 23-411 (U.S. 2023) (quoting *Missouri v. Biden*, 83 F.4th

350, 371 (5th Cir. 2023)).

23.     As Supreme Court Justice Samuel Alito put it, "the District Court found that [since early

2021] Government officials have asked social media platforms to block Mr. Kennedy's efforts to

communicate with the public and that the platforms have complied." *Murthy v. Missouri*, 144 S.

Ct. 32, 32 (2023) (Alito, J., dissenting from denial of motion to intervene) (citing *Missouri v.

Biden*, No. 3:22-CV-01213, 2023 U.S. Dist. LEXIS 114585, at *5, 9, 40 (W.D. La. July 4,

2023)).

24.     These findings have been recently confirmed by an intensively documented congressional

report detailing a "campaign by the Biden White House to coerce large companies, namely Meta

(parent company of Facebook), Alphabet (parent company of YouTube), and Amazon, to censor

---

[2] *See Missouri v. Biden*, No. 3:22-CV-01213, 2023 U.S. Dist. LEXIS 114585 (W.D. La. July 4
2023), *aff'd*, 83 F.4th 350, 371 (5th Cir. 2023).

books, videos, posts, and other content online."[3]  As the report states, "[b]y the end of 2021, Facebook, YouTube, and Amazon changed their content moderation policies in ways that were directly responsive" to requests and demands made by the Biden Administration."[4]

25.     With extensive quotation from internal Facebook emails and other documents, the report describes in detail "collusion" between Facebook and the White House eventually resulting in an agreement by Facebook pursuant to which the platform would and did implement censorship policies suppressing critics of the Administration, particularly critics of its COVID policies, specifically including Mr. Kennedy.[5]

26.     But Mr. Kennedy is only one of innumerable Americans whom the country's behemoth social media platforms censored in collusion and partnership with the White House and other government entities and officials, in what the District Court called "arguably the most massive attack against free speech in United States history." *Missouri v. Biden*, 2023 U.S. Dist. LEXIS 114585, at *158.

27.     In this "massive attack against free speech," Meta has been the government's censor-in-chief.

28.     At the urging of, and in conspiracy with, the White House, Meta agreed to censor and does censor "content that does not violate Facebook's policy." *Id*. at *15.

29.     It does so "according to White House 'requests'." *Id*. at *18.

---

[3] U.S. HOUSE OF REPRESENTATIVES, COMMITTEE ON THE JUDICIARY AND THE SELECT SUBCOMMITTEE ON THE WEAPONIZATION OF THE FEDERAL GOVERNMENT, *The Censorship-Industrial Complex: How Top Biden White House Officials Coerced Big Tech To Censor Americans, True Information, And Critics Of The Biden Administration* at 1 (May 1, 2024), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/Biden-WH-Censorship-Report-final.pdf.
[4] *Id.*
[5] *See id*. at 8, 10-51; *id*. at 44 (deplatforming of Mr. Kennedy from Instagram).

30.     In communications with federal officials about whom and what to censor, Meta has

offered itself as, and acted as, a "partner" with the White House "to drive behavior." *See id.* at

*18 ("Meta also stated [in email communications with the White House], 'We think there is

considerably more we can do in "*partnership*" with you and your team to drive behavior.'")

(emphasis by the Court)).

31.     At the urging of, and in conspiracy with, the White House, Meta censors content that

does not contain misinformation. *See, e.g.*, *id*. at *20 ("Facebook noted [in internal emails]

that in response to White House demands, it was censoring, removing, and reducing the virality

of content discouraging vaccines '***that does not contain actionable misinformation***.'")

(emphasis added).

32.     But in public Meta says the opposite.

33.     On its content-moderation COVID policy pages, Meta fraudulently and falsely represents

that it censors only misinformation.

34.     These misrepresentations falsely communicate to users and the public that when Meta

censors COVID- or vaccine-related content, the censored content is factually false or at the very

least, that Meta has made a determination that the censored content is factually false.

35.     At the urging of, and in conspiracy with, the White House, Meta has by its own

admission even censored discussions of constitutional rights and civil liberties, knowing that

such speech contained no misinformation and did not otherwise violate any Meta policies.  *See,

e.g.*, *id*. at *24 ("Other content that Facebook admitted did not violate its policy but may

contribute to vaccine hesitancy [included] ***discussing the choice to vaccinate in terms of

personal or civil liberties*** . . . . Facebook noted it censors such content through a 'spectrum of

COMPLAINT 6

levers' that includes concealing the content from other users, 'de-boosting' the content, and preventing sharing through 'friction.'") (emphasis added).

36.     Less than three months ago, the District Court issued an injunction against numerous federal agencies and officials in favor of Mr. Kennedy to put a halt to such censorship against him. *See Kennedy v. Biden*, No. 3:23-CV-00381, 2024 U.S. Dist. LEXIS 26751 (W.D. La. Feb. 14, 2024). (The injunction is currently stayed pending appellate review.)

37.     In that ruling, the District Court specifically found that Mr. Kennedy and other plaintiffs had "produced evidence of a massive effort by Defendants, from the White House to federal agencies, to suppress speech based on its content," "likely result[ing] in millions of free speech violations." *Id.* at *30.

38.     The District Court also found it likely that social media censorship in collusion with the Federal Government was still ongoing and "***certainly likely that Defendants could use their power over millions of people to suppress alternative views or moderate content they do not agree with in the upcoming 2024 national election.***" *Id*. at *27-28 (emphasis added).

39.     The District Court's concern and prediction vividly materialized days ago, when Meta censored *Who Is Bobby Kennedy*.

40.     The film is the property of AV24, which paid approximately one million dollars to cover production costs.

41.     It was written, produced, and directed by acclaimed screenwriter Jay Carson and director and photographer Mike Piscitelli, and it is narrated by award-winning actor Woody Harrelson.

42.      Clips of past interviews with Mr. Kennedy are featured prominently in *Who Is Bobby Kennedy*, so that his speech and advocacy are central to the film.

43.     At 4:24 pm on May 3, 2024, AV24 uploaded to its Facebook page a short "teaser" or trailer for *Who Is Bobby Kennedy*.

44.     At 4:38 pm, AV24 posted a full-length version of the film on a dedicated website, whoisbobbykennedy.com.

45.     Within minutes, Meta began censoring the film on the platforms it owns and controls.

46.     As early as 4:45 pm, Facebook was blocking and removing the teaser or trailer when users tried to post it on their own pages.

47.     On Facebook and Instagram, users who attempted to watch the film were prevented from doing so.

48.     On Facebook and Instagram, users who attempted to share the film were prevented from doing so.

49.     On Facebook and Instagram, users who attempted simply to post links to the film or to the dedicated website were prevented from doing so.

50.     On Facebook and Instagram, users who attempted to watch, share, or post a link to the film were not only prevented from doing so; they were threatened with suspension of their accounts and/or other punitive action if they persisted in such activity and were warned that "repeatedly breaking our rules can cause accounts more restrictions."[6]

51.     Defendants made good on these threats, penalizing users for multiple (blocked) attempts to share the link, including having restrictions imposed on their Facebook and/or Instagram accounts, and including in some cases account suspensions.

---

[6] The Kennedy campaign has received hundreds of screenshots from third-party users showing the threats, intimidation and sanctions the users themselves received from Meta for attempting to watch, post or link to the film. A true and correct copy of some these screenshots is attached as Exhibit 1.

52.     Users received messages giving a wide variety of explanations of Facebook's and Instagram's actions, including assertions that *Who Is Bobby Kennedy* violated Facebook's "community standards," that it was "spam," that it "praise[d] organized crime or hate groups," that it "solicit[ed] sexual services," that it contained "sexual activity," or "violent or graphic content," that it offered the "sale of firearms or drugs," or that it "may be malicious."

53.     All these suggestions were and are absurd.

54.     On some users' pages, when they tried to watch *Who Is Bobby Kennedy?*, a still shot from the film was displayed, and along with a message saying that the film was "blocked," a COVID overlay was inserted into the still shot saying "COVID-19 vaccine" and directing users to get information from other recommended sources, such as the federal Centers for Disease Control and Prevention ("CDC"), an agency that has been integral to the Administration's online censorship campaign directed at COVID- and vaccine-related content. *See, e.g.*, *Missouri v. Biden*, 83 F.4th at 361-62 ("CDC officials also provided direct guidance to the platforms on the application of the platforms' internal policies and moderation activities."); *Missouri v. Biden*, 2023 U.S. Dist. LEXIS 114585, at *51 ("Federal officials informed Facebook that the federal health authority that could dictate what content could be censored as misinformation was the CDC.").

55.     On information and belief, Defendants blocked *Who is Bobby Kennedy* because of the Federal Government's repeated demands to "block Mr. Kennedy's efforts to communicate with the public," *Murthy v. Missouri*, 144 S. Ct. at 32, because of opposition to Mr. Kennedy's candidacy, and because the film explains that Mr. Kennedy successfully fought to get harmful mercury out of childhood vaccines, that contrary to repeated claims about him, he is not anti-

vaccine, that his own children are vaccinated, and that he himself has taken all recommended vaccines except the COVID vaccine.

56.    In the early morning of May 5, 2024, after receiving considerable negative press, Meta claimed in a statement to the New York Times that its censorship of *Who Is Bobby Kennedy* was the result of a "mistaken" determination that the film was "spam," that the "mistake" had been corrected, and that the film was no longer being censored.

57.    All these claims were false.

58.    The notion that *Who Is Bobby Kennedy* was being accidentally censored because it was mistaken for "spam" is not only implausible on its face (spam refers to in-bulk dissemination of messages, especially commercial messages, to large numbers of recipients, whereas Defendants were censoring individual users from merely posting a link on their own pages to a website displaying a political film), but is contradicted by (a) the numerous messages users received from Meta offering other, equally implausible explanations, such as the claim that the film was being censored because it contained "violent" or "sexual" content; and (b) the COVID overlay that was inserted over a still-shot from the film, warning users to get COVID-related information from other sources.

59.    More fundamentally, Defendants are ***still*** censoring *Who Is Bobby Kennedy*.

60.    Meta is continuing to throttle, de-boost, demote, and shadow-ban the film, for example by preventing links to the film from appearing on users' timelines or feeds, techniques through which Meta deliberately, substantially but surreptitiously reduces the reach and dissemination of content.[7]

---

[7]  Meta uses a variety of devices and strategies to secretly demote, hide, and/or limit the visibility and reach of disfavored content (practices known as "shadow-banning," "sand-boxing," or

61.     In fact, at 10:42 a.m. on May 5, when given the following question:

> *When users post the link whoisbobbykennedy.com can their followers see the post in their feeds?*

Meta's own AI Chatbot, META AI, answered:

> *I can tell you that the link is currently restricted by Meta.*

62.     From May 5 through May 10 (the date of this writing), Meta has continued to block access to *Who Is Bobby Kennedy?*, to remove it, and to block links to it, while also sending messages to users falsely stating that the film was "spam" or contained "sexual" or "violent" content. *See* Exh. 1.

63.     As of May 7, in some parts of Europe, Meta was still blocking the film completely.

64.     Moreover, Meta has censored and is still censoring other, entirely unrelated posts supporting the election of Mr. Kennedy.

65.     For example, on May 8, a user tried to post the following statement to her Facebook page: "RFKj needs 180,000 signatures to get on the ballot in #Texas and time is running out. Go to kennedy24.com/events and find a petition signing event near you." She received the following message: "We removed your comment." The message further stated that "[y]our comment goes against our Community Guidelines" (which is false) and that "[r]epeatedly breaking our rules can cause more account restrictions."

66.     Moreover, both before and after May 5, Facebook and Instagram users were hit with account suspensions for trying to share or link to *Who Is Bobby Kennedy*, and those suspensions in some cases are still operative.

---

"deboosting"). In such cases, the "offending" users—here, AV24 or people trying to share *Who Is Bobby Kennedy*—are not made aware that their content is being suppressed.

67.     To give just one of innumerable examples, on May 7, a Kennedy supporter located in California sought to post a link to *Who Is Bobby Kennedy* on both Instagram and Facebook, but was blocked from doing so. When he continued trying to share the film with others through his Facebook page, he received a message from Facebook stating that his account had been placed under a 24-hour suspension during which he would not be able to post any further content on it. *See* Exh. I.

68.     Defendants' censorship of *Who Is Bobby Kennedy* has prevented the film from reaching tens of millions of Facebook and Instagram users, and millions more people with whom those Facebook and Instagram users would have shared the film.

69.     By comparison to the viral impact of *Who Is Bobby Kennedy* on X, where the film's original posting has now been viewed one hundred million times, the film's reach on Instagram and Facebook has been minimal, demonstrating the immensely powerful suppressive effect of Defendants' censorship and threats.

70.     The popularity of *Who Is Bobby Kennedy* on X does not negate Meta's censorship of the film; on the contrary, it demonstrates the scope of the injuries that Meta's censorship is causing.

71.     Facebook is the dominant social media platform for Americans aged 58 and over, who include the "Baby Boomer" generation.

72.     An estimated 60-70% of this demographic use Facebook, as compared to only some 10% who use X.

73.     Americans aged 58 and over are a critical voting and donating demographic.

74.     Accordingly, regardless of the film's availability and popularity on X, Meta's suppression of *Who Is Bobby Kennedy* has caused and is causing substantial donation losses to Mr. Kennedy and AV24, as well as substantial injury to Mr. Kennedy's candidacy, to Mr.

Kennedy's and AV24's free speech rights, to Mr. Kennedy's and AV24's property rights, to the

right of citizens around the country to support and advocate in favor of Mr. Kennedy, and to the

nation's paramount interest in a free and fair presidential election.

## PARTIES

75.     Plaintiff Robert F. Kennedy, Jr. is an award-winning lawyer, author, and current

candidate for President of the United States.

76.     Plaintiff American Values 2024 (AV24) is a super PAC committed to educating and

mobilizing voters to elect candidates who will restore and protect the soul of democracy in the

United States. Currently, AV24 supports Mr. Kennedy's presidential campaign.

77.     Defendant Meta Platforms, Inc. is a trillion-dollar social media corporation headquartered

at 1 Hacker Way in Menlo Park, California.

78.     Defendant Facebook Operations, LLC is and/or operates the vastly popular social media

platform known as Facebook, and is headquartered in California.

79.     Defendant Instagram, LLC, is and/or operates the popular social media platform known

as Instagram, and is headquartered in California.

80.     Defendant Mark Zuckerberg is Meta's CEO and controlling shareholder and a resident of

California.

81.     Defendants John Doe 1-10 are officers and employees of Meta, Facebook, and/or

Instagram, whose identities are unknown to Plaintiffs, who knowingly participated in, agreed to

implement, or knowingly neglected or refused to prevent the censorship of *Who Is Bobby

Kennedy*, despite having power to prevent or aid in preventing the commission of the same.

## JURISDICTION,  VENUE, AND DIVISION

82.     The Court has jurisdiction under the Constitution, 28 U.S.C. § 1331, and 42 U.S.C.

§§ 1985, 1986, as this case arises out of Defendants' violation of the First Amendment and of the

Civil Rights Act of 1871 as alleged herein.

83.     Venue is proper because of Meta forum-selection clauses, because all Defendants reside

in this state and at least one Defendant resides in this district, because the events in question

substantially took place here, and/or because several of the Defendants are subject to personal

jurisdiction here. 28 U.S.C. § 1391(b)(1)-(3).

84.     This case should be assigned to the San Francisco Division based on the Defendants'

location in this Division, and because many of the wrongdoings arose in this Division.

## COUNT ONE:
## VIOLATION OF THE FIRST AMENDMENT

85.     All preceding paragraphs are hereby realleged.

86.     The systematic campaign by the Biden White House and other federal entities and

officials to induce the country's dominant social media platforms—Meta in particular—to censor

protected speech has been found by the District Court of the Western District of Louisiana and

by the Fifth Circuit Court of Appeals to constitute sufficient coercion, significant

encouragement, and collusion to turn social media censorship into state action.

87.     The opinions issued, and detailed factual findings made, by those courts are incorporated

herein by reference and are, in any event, publicly available, and Plaintiffs assert the following

on the basis of those detailed factual findings as well as on the basis of the allegations set forth

above.

88.     In addition, the May 1, 2024 congressional report discussed above (the "Congressional Report")[8] is incorporated herein by reference, and Plaintiffs assert their First Amendment and statutory claims on the basis of the copiously documented communications between Defendants and the Federal Government described and quoted in that report.

89.     Meta's censorship policies with respect to COVID- and vaccine-related content—its actual policies, as well as the policies it publicly proclaims—are the product of government coercion, significant encouragement, and close collusion (joint action, conspiracy) and are therefore state action for constitutional purposes.  One of the principal means by which the White House and other federal actors coerced and colluded in social media censorship was by inducing social media companies to "alter[] their algorithms," change their content moderation policies, and change their terms of service. *Missouri*, 83 F.4th at 397; *see also Missouri*, 2023 U.S. Dist. LEXIS 114585, at *159 (Federal Defendants pressured social media companies to change their policies to suppress free speech).

90.     Meta has for years been censoring Mr. Kennedy in implementation of those state-action algorithms, policies, and terms of service, and continues to do so.

91.     Meta has effected this censorship even though Meta knew that the speech it was censoring was constitutionally protected.

92.     Meta's censorship of Mr. Kennedy, individuals seeking to listen to his speech or share that speech or otherwise support his candidacy, and of *Who Is Bobby Kennedy* is state action because it implemented and executed those state-action algorithms, policies, or terms of service.

---

[8] U.S. HOUSE OF REPRESENTATIVES, COMMITTEE ON THE JUDICIARY AND THE SELECT SUBCOMMITTEE ON THE WEAPONIZATION OF THE FEDERAL GOVERNMENT, *The Censorship-Industrial Complex: How Top Biden White House Officials Coerced Big Tech To Censor Americans, True Information, And Critics Of The Biden Administration* at 1 (May 1, 2024), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/Biden-WH-Censorship-Report-final.pdf.

93.     Such censorship is content- and viewpoint-based and a knowing suppression of protected speech, and is therefore unconstitutional.

94.     *Who Is Bobby Kennedy* is core First Amendment protected political speech both of AV24 (the owner and publisher) and of Mr. Kennedy (who speaks in the film).

95.     Accordingly, Meta has violated the First Amendment rights of Plaintiffs Kennedy and AV24, as well as of countless Americans whom they prevented from sharing or seeing the film.

## COUNT TWO:
## VIOLATION OF 42 U.S.C. § 1985

96.     All preceding paragraphs are hereby realleged.

97.     The Support and Advocacy Clause of 42 U.S.C. § 1985, originally enacted as part of the Ku Klux Klan Act of 1871, prohibits conspiracies of two kinds.

98.     First, it prohibits conspiracies to "prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President." 42 U.S.C. § 1985(3).

99.     Second, independently, it prohibits conspiracies "to injure any citizen in person or property on account of such support or advocacy." *Id.*

100.    Unlike the "equal protection" or "equal privileges" clause of Section 1985(3), the Support and Advocacy Clause is not limited to class-based discrimination and does not require (although it can be predicated on) the involvement of government officials. *See, e.g.*, *Cervini v. Cisneros*, 593 F. Supp. 3d 530 (W.D. Tex. 2023).

101.    Parties to a Section 1985 conspiracy can include natural persons, corporations, private actors, state officials, and federal officials.

102.    Section 1985(3) creates a private cause of action against any and all such conspirators by any person injured in his person or property by acts taken in furtherance of the conspiracy, and in such actions the court may award injunctive relief as well as monetary damages.

103.    Expressing support for or advocacy of a presidential candidate qualifies as an act of support or advocacy "toward or in favor of the election of any lawfully qualified person as an elector for President" under the Support and Advocacy Clause of Section 1985(3). *See, e.g.*, *Cervini v. Cisneros*, 593 F. Supp. 3d 530, 532, 539 (W.D. Tex. 2023) (recognizing cause of action under Support and Advocacy Clause where private actor defendants allegedly harassed individuals riding in a Biden-Harris campaign tour bus).

104.    An "injury" to "person or property" for Section 1985(3) purposes "does not need to be one of violence or bodily harm; rather, 'economic harm, legal action, dissemination of personal information," and intangible invasions of protected interests "can qualify depending on the circumstances.'" *Gaetz v. City of Riverside*, No. 5:23-cv-01368-HDV, 2024 U.S. Dist. LEXIS 52974, at *29 (C.D. Cal. Mar. 22, 2024) (citations omitted).

105.    The words "threat," "intimidation," and "injury" in federal statutes protecting against election interference and prohibiting private actors from hindering citizens in the exercise of rights encompass not only physical violence but also ***misrepresentation*** intended to prevent or dissuade people from exercising their rights. *See, e.g.*, *United States v. Mackey*, No. 21-CR-80 (AMD)**,** 2023 U.S. Dist. LEXIS 186646, at *65-66 (E.D.N.Y. Oct. 17, 2023) (upholding conviction for disseminating false information online intended to trick people into not voting, and holding that the words "injure, oppress, threaten, or intimidate" in 18 U.S.C. § 241 encompass not only "violence," but also **"*false utterances*"**) (emphasis added).

106.    Meta, Facebook, Instagram, and their officers and agents have met in person and communicated electronically with White House officials and many other federal officials innumerable times to discuss censorship policies and specific censorship decisions. *See, e.g., Missouri*, 2023 U.S. Dist. LEXIS 114585, at \*13-35; Congressional Report, *supra*, at 10-51.

107.    In and through these communications, Meta, Facebook, Instagram, and Zuckerberg formed a self-described "partnership" agreement with the White House and federal officials to adopt and implement policies: (a) to censor content disfavored by the Biden Administration, including specifically speech that could increase "vaccine hesitancy" or bring Administration COVID measures into disrepute, even when such content was indisputably true or protected speech, including discussions of vaccine opposition framed in terms of constitutional rights or civil liberties; (b) to undermine such speech and reduce its appeal and effect, including by falsely communicating to users that the content was "misinformation"; (c) to threaten users who persisted in seeking to post or share such content with suspension, de-platforming, account freezing, account termination, and/or other punitive measures; and (d) to take such punitive actions against users who sought to post or share such content.

108.    Defendant Zuckerberg (as well as other senior Meta executives) played a direct and significant role in deciding on Meta's response to the Government's communications and in forging Meta's "partnership" with the Government.  *See, e.g.*, Congressional Report, *supra*, at 10 ("After months of pressure, top Facebook executives, including Mark Zuckerberg, Sheryl Sandberg, and Nick Clegg decided that Facebook had 'bigger fish to fry' with the Biden Administration, such as issues related to 'data flows,' and defending free expression on the companies' platforms was not worth drawing the ire of the [most] powerful office in the world.").

109.    This partnership agreement between Defendants and government officials was and is a conspiracy for Section 1985(3) purposes (the "governmental conspiracy").

110.    Defendants acted on the governmental conspiracy by censoring millions of posts violating the agreed-upon policies and by falsely claiming through public statements and messages to users that such censored content was inaccurate or "misinformation," and by deplatforming and threatening to deplatform users who posted such content.

111.    Defendants further acted on this conspiracy by censoring *Who Is Bobby Kennedy*.

112.    Defendants further acted on this conspiracy by sending users messages falsely stating that *Who Is Bobby Kennedy?* violated Facebook's or Instagram's "community standards," by falsely representing that the film was "spam," contained "violent" or "sexual" content, or contained inaccurate COVID- or vaccine-related information, by threatening users with suspension and/or other punitive action if they continued trying to watch, post, share or link to the film, and by inflicting such punishment on users who did so.

113.    Apart from and in addition to its conspiracy with federal officials (the government conspiracy), Meta, Facebook, Instagram, Zuckerberg, and John Doe Defendants 1-10 (officers and employees of Meta, Facebook, and Instagram whose identities are unknown to Plaintiffs) also conspired with one another (the "private conspiracy") to censor and deboost *Who Is Bobby Kennedy* and other expressions of support or advocacy in favor of Mr. Kennedy's candidacy for president and to punish users who engaged in such support or advocacy.

114.    Defendants acted on this private conspiracy by censoring *Who Is Bobby Kennedy* and by censoring other expressions of support or advocacy in favor of Mr. Kennedy's candidacy for president.

115.    Defendants further acted on this private conspiracy by sending users messages falsely stating that the film violated Meta "community standards," was "spam," contained violent or sexual content, or contained inaccurate COVID- or vaccine-related information, by threatening users with suspension and/or other punitive action if they continued trying to watch, post, share or link to the film, and by inflicting such punishment on users to who did so.

116.    Disseminating, sharing, or linking to *Who Is Bobby Kennedy* is an act of lawful "support or advocacy" for a presidential candidate covered and protected by Section 1985(3).

117.    The non-consented-to blocking of communications and the punitive suspension of social media accounts qualify as acts of "force" for Section 1985(3) purposes.

118.    The threat to suspend or other punish for posting, watching, sharing, or linking to *Who Is Bobby Kennedy* qualifies as "intimidation or threat" for Section 1985(3) purposes.

119.    The false utterances and misrepresentations sent by Defendants to users such as those falsely claiming that *Who Is Bobby Kennedy* was "spam," contained forbidden "sexual" content, contained forbidden "violent" content, or otherwise violated Meta community standards were intended to prevent and dissuade users from sharing or posting links to the film.

120.    Defendants' above-described overt acts in furtherance of the governmental and private conspiracies have involved wrongful, injurious, and tortious conduct, including fraudulent, damaging misrepresentation of the censored conduct, fraudulent misrepresentation of Meta's actual censorship policies, knowingly false denigration of the censored content, breach of terms of service, and breach of contract.

121.    Accordingly, through both the governmental and private conspiracies, Defendants violated Section 1985(3) by conspiring to prevent citizens by "force, intimidation, or threat"

"from giving [their] support or advocacy in a legal manner, toward or in favor of" a presidential candidate. 42 U.S.C. § 1985(3).

122.    In addition, through the private conspiracy—the agreement among Meta, Facebook, Instagram, and their officers and its employees to censor *Who Is Bobby Kennedy*—Defendants violated Section 1985(3) by conspiring to "to injure [citizens] in person or property on account of such support or advocacy."

123.    Defendants conspired to effect such injury by, for example, depriving Meta users of their control over their accounts if they sought to share, post, or link to the film, by suspending or threatening users with account suspension or termination if they engaged in such acts, by preventing AV24 (the owner of *Who Is Bobby Kennedy*) from distributing its property, by depriving AV24 of the value of its property, by injuring Mr. Kennedy's reputation, by depriving AV24 and Mr. Kennedy of substantial donations, by denying Mr. Kennedy visibility and support, by disseminating misrepresentations about the film claiming that it was "spam," contained forbidden "sexual" content, contained forbidden "violent" content or otherwise violated Meta community standards, such misrepresentations being intended to prevent and dissuade users from sharing or posting links to the film.

124.    Through the overt acts described above, Defendants effected all the injuries just enumerated (as well as others).

125.    Accordingly, under Section 1985(3), all Plaintiffs were injured in their persons and property through acts taken in furtherance of the Defendants' conspiracies, and were moreover deprived of having and exercising their rights and privileges as citizens to support and advocate for the presidential candidate of their choice, and may therefore sue each and every one of the conspirators.

## COUNT THREE:
## <u>VIOLATION OF 42 U.S.C. § 1986</u>

126.    All preceding paragraphs are realleged.

127.    Under Section 1986 of the Civil Rights Act of 1871, a person who knows that a Section 1985 wrong is "about to be committed," and who has the power "to prevent or aid in preventing the commission thereof," acts unlawfully if he "neglects or refuses to do so."  42 U.S.C. § 1986.

128.    Through its officers and employees, Defendant Meta knew that all the Section 1985 wrongs described above were about to be committed and had power to prevent those wrongs and neglected or refused to do so.

129.    In addition, Defendant Zuckerberg, as Meta's famously hands-on CEO, must have known and did know that Meta was censoring *Who Is Bobby Kennedy*, and that the Section 1985 wrongs described above were about to be committed (and still are being committed), had power to prevent those wrongs, and neglected or refused to do so.

130.    In addition, certain unknown John Doe Defendants knew that the Section 1985 wrongs described above were about to be committed, had power to prevent those wrongs and neglected or refused to do so.

131.    Accordingly, Defendants Meta, Zuckerberg and certain of the John Does violated 42 U.S.C. § 1986 and are liable for all damage caused.

### DEMAND FOR JURY TRIAL

132.    Plaintiff demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

133.    WHEREFORE, Plaintiffs respectfully request:

A.    Compensatory damages in an amount to be determined by the Jury;

B.      An injunction judgment ordering Defendants (i) to desist from any further censorship of *Who is Bobby Kennedy*, including all forms of blocking, content-removal, and shadow-banning, as well as of any other expressions of support or advocacy of Mr. Kennedy's presidential candidacy; (ii) to desist from any further threats to take punitive action against users who try to watch, share or post links to that film or otherwise express support or advocacy for Mr. Kennedy's candidacy; (iii) to desist from any further misrepresentations of that film; (iv) to lift any suspensions, restrictions or other measures taken against users for trying to share or post a link to the film or otherwise expressing support or advocacy for Mr. Kennedy's candidacy; and (v) to desist from any further collusion with federal officials to censor protected speech.

C.      An award of attorneys' fees and costs to Plaintiffs;

D.      An award of punitive damages to Plaintiffs in an amount to be determined at trial;

E.      An order requiring Defendants to make a public retraction of their false statements;

F.      A declaratory judgment declaring that Defendants have violated the First Amendment, 42 U.S.C. § 1985, and 42 U.S.C. § 1986 through the acts described above; and

G.      An award of such other and further relief as the Court may deem just and proper.

Date:   May 13, 2024.

Respectfully submitted,


_____*-s-*_____
JED RUBENFELD
(NY Bar # 2214104)
(pro hac vice forthcoming)
1031 Forest Rd.
New Haven, CT 06515
Telephone: (203) 432-7631
E-mail: jed.rubenfeld@yale.edu

_____*-s-*_____
ROGER I. TEICH
California State Bar No. 147076
337 Liberty Street
San Francisco, CA 94114
Telephone:  (415) 948-0045
E-Mail Address:  rteich@juno.com

Attorneys for Plaintiff American Values 24 (AV24)


_____*-s-*_____
RICHARD JAFFE, ESQ.
California Bar No. 289362
428 J Street, 4th Floor
Sacramento, California 95814
Tel: 916-492-6038
Fax: 713-626-9420
Email: rickjaffeesquire@gmail.com
Attorney for Plaintiff Robert F. Kennedy, Jr.

**VERIFICATION**

I, ANTHONY LYONS, declare under penalty of perjury as follows:

1.     I am the Treasurer for American Values 2024 (AV24), a political action committee and one of the Plaintiffs in this action.

2.     I have reviewed the foregoing Complaint and declare that the facts set out therein are true to the best of my knowledge and belief, except those matters stated as upon information and belief, which are true to the best of my belief.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 12th day of May 2024.

_____
Anthony Lyons

I am the electronic filer of this document, and I hereby attest that Anthony Lyons, signatory of this document, concurs in the filing hereof.

_____
-s-
Roger Teich