JED RUBENFELD
NY Bar # 2214104
1031 Forest Rd.
New Haven, CT 06515
Telephone: (203) 432-7631
E-mail: jed.rubenfeld@yale.edu

Attorney for Plaintiffs American Values 24 and Jessica Reed Kraus

DEIRDRE L. GOLDFARB
California State Bar No. 239396
330 S. Spalding Dr., Apt 105
Beverly Hills, CA 90212-3612
Telephone: (310) 756-3164
E-mail: dgoldfarblaw@gmail.com

Attorney for Plaintiff American Values 2024

RICHARD JAFFE, ESQ.
California State Bar No. 289362
428 J Street, 4th Floor
Sacramento, California 95814
Tel: (916) 492-6038
E-Mail: rickjaffeesquire@gmail.com

Attorney for Plaintiffs Robert F. Kennedy, Jr. and Jessica Reed Kraus

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| ROBERT F. KENNEDY, JR., AMERICAN VALUES 2024, and JESSICA REED KRAUS,<br>        *Plaintiffs*,<br>-v.-<br>META PLATFORMS, INC., FACEBOOK OPERATIONS, LLC, INSTAGRAM, LLC, MARK ZUCKERBERG, and JOHN DOES 1-10,<br>        *Defendants*. | **Case Number:** 3:24-cv-02869-WHO<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Date: August 28, 2024<br>Time: 2:00 PM<br>Courtroom: 2, 17th Floor** |

**TABLE OF CONTENTS**

Introduction………………………………………………………………….. 1

Argument……………………………………………………………………. 3

    I.      Defendants Cannot Hide Behind the First Amendment………. 3

    II.     The Equitable Factors Are Established as a Matter of Law……. 4

    III.    Defendants' Statutory Defenses Are Baseless…………………. 5

    IV.    Plaintiffs Have Shown a Likelihood of Success or Serious Issues Going to the Merits on their First Amendment Claim…... 11

    V.     Section 230 Immunity Is Irrelevant to this Case……………….. 13

Conclusion…………………………………………………………………… 15

# TABLE OF AUTHORITIES

**Cases**

*American Bev. Ass'n v. City & County of San Francisco*, 916 F.3d 749 (9th Cir. 2019) .............................. 4
*Ariz. Alliance for Retired Americans. v. Clean Elections USA*, 638 F. Supp. 3d 1033 (D. Ariz. 2022) ....... 5
*Bey v. City of Oakland*, No. 14-cv-01626-JSC, 2015 U.S. Dist. LEXIS 167685 (N.D. Cal. Dec. 15, 2015) 7
*Biden v. Nebraska*, 600 U.S. 477 (2023) ........................................................................................................ 7
*Children's Health Defense v. Meta Platforms, Inc.*, No. 21-16210, 2024 U.S. App. LEXIS 20053 (9th Cir. Aug. 9, 2024) .......................................................................................................................................... 12
*Counterman v. Colorado*, 600 U.S. 66 (2023) .............................................................................................. 6
*CTIA v. City of Berkeley*, 928 F.3d 832 (9th Cir. 2019) ............................................................................... 4
*Daschle v. Thune*, No. 04-cv5 Case 1:22-cv-00581-CNS-NRN (D.S.D. Nov. 2, 2004) .............................. 6
*Durning v. Citibank, N.A.*, 950 F.2d 1419 (9th Cir. 1991) ......................................................................... 11
*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040  (9th Cir. 2019) ......................... 14
*Fair Fight Inc. v. True the Vote*, No. 2:20-CV-00302-SCJ, 2024 U.S. Dist. LEXIS 22 (N.D. Ga. Jan. 2, 2024) ....................................................................................................................................................... 6
*Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ........................................... 14
*Gill v. Farm Bureau Life Insurance Co. of Missouri*, 906 F.2d 1265 (8th Cir. 1990) ............................... 11
*Hill v. Williams*, No. 16-cv-02627-CMA, 2016 U.S. Dist. LEXIS 155460 (D. Colo. Nov. 4, 2016) .......... 2
*HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985 (9th Cir. 2019) .................................................................. 9
*K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087 (9th Cir. 1972) ....................................................................... 2
*Kennedy v. Biden*, No. 3:23-CV-00381, 2024 U.S. Dist. LEXIS 26751 (W.D. La. Feb. 14, 2024) ........... 11
*Krabach v. King Cnty*, No. 2:22-cv-1252-BJR, 2023 U.S. Dist. LEXIS 191870 (W.D. Wash. Oct. 25, 2023) ................................................................................................................................................... 3, 9
*League of United Latin Am. Citizens v. Pub. Int. Legal Found.*, No. 18-cv-423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018) .................................................................................................................................. 6
*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) ................................................................................ 14
*Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023) ......................................................................................... 12
*Murthy v. Missouri*, 144 S. Ct. 1972 (2024) ............................................................................................... 11
*Nat'l Coalition on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457 (S.D.N.Y. 2020) ................. 3, 6
*Nat'l Coalition on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78 (S.D.N.Y. 2023) ....................... 2
*Pasaye v. Dzurenda*, 375 F. Supp. 3d 1159 (D. Nev. 2019) ........................................................................ 4
*Rashdan v. Geissberger*, No. 10-00634 SBA, 2011 U.S. Dist. LEXIS 4792 (N.D. Cal. Jan. 14, 2011) ...... 7
*Safex Found., Inc. v. Safeth, Ltd.*, 531 F. Supp. 3d 285 (D.D.C. 2021) ........................................................ 9
*Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 U.S. App. LEXIS 4347 (5th Cir. Feb. 17, 2022) .. 4
*Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876 (N.D. Cal. 2015) .......................................................... 14
*Thalheimer v. City of San Diego*, 645 F.3d 1109 (9th Cir. 2011) ................................................................ 2
*United States v. Hughes Aircraft Co.*, 20 F.3d 974 (9th Cir. 1994) ............................................................. 8
*United States v. Tan Duc Nguyen*, 673 F.3d 1259 (9th Cir. 2012) ............................................................... 3
*United States v. Taylor*, 596 U.S. 845 (2022) .............................................................................................. 9
*Washington v. Duty Free Shoppers*, 696 F. Supp. 1323 (N.D. Cal. 1988) .................................................. 8
*Webster v. Omnitrition Int'l*, 79 F.3d 776 (9th Cir. 1996) ........................................................................... 8
*Williams v. Big Picture Loans, LLC*, 693 F. Supp. 3d 610 (E.D. Va. 2023) ................................................ 8

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF A PRELIMINARY INJUNCTION**

## INTRODUCTION

Defendants have somehow managed to submit hundreds of pages of argument and exhibits without ever mentioning—much less rebutting—the core allegations against them. Most of their brief is directed against the wrong lawsuit. Defendants say that "Plaintiffs' suit centers on a thirty-minute video entitled *Who is Bobby Kennedy*." (ECF No. 35 at 5.) That may have been true in May, when Plaintiffs first filed. It is emphatically not true now.

Plaintiffs have amended their complaint and seek urgent injunctive relief because in the last sixty days—i.e., subsequent to Meta's suppression of *Who Is Bobby Kennedy*—Defendants' censorship attack on Mr. Kennedy's candidacy has radically expanded. Specifically:

- Defendants are now censoring users who simply express support for Mr. Kennedy's candidacy or urge others to vote for him;
- For example, Defendants are blocking—not merely shadow-banning but actually blocking and removing—posts such as "Kennedy all the way!", "VOTE KENNEDY", "Time to add Kennedy to the mix", and "#letbobbydebate";
- The Kennedy Campaign has received hundreds of reports from Facebook and Instagram users attesting to such censorship;
- Such posts cannot possibly be said to violate any Facebook or Instagram terms of service;
- Defendants are sending threatening messages to users who attempt to post their support or advocacy for Mr. Kennedy telling them that continued efforts to do so will result in account suspension or termination;
- Defendants are making good on these threats, suspending users who express support for Mr. Kennedy.

These facts, the core allegations now facing Defendants, are stated on the first two pages

1

of Plaintiffs' Verified Amended Complaint,[1] restated in Plaintiffs' opening brief, and stated yet again in the Rasmussen Declaration. Defendants cannot pretend to have missed them. But Defendants never mention these facts, never deny them, never rebut them. They must therefore be deemed admitted and established on this motion.[2]

And with these facts established, so is the unlawfulness of Defendants' conduct. Under Section 11(b) of the Voting Rights Act, it is unlawful to "threaten . . . any person for urging . . . any person to vote." 52 U.S.C. § 10307(b). But that is literally what Defendants are doing: threatening users with account suspension or termination for urging people to vote for Mr. Kennedy. *See, e.g.*, *Nat'l Coalition on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 113 (S.D.N.Y. 2023) ("unlawful threats or intimidation under [Section 11(b)] need not be violent or physical" and "include communications inspiring fear of" any "injury" that would "deter individuals from exercising their right" to engage in the protected conduct); *Hill v. Williams*, No. 16-cv-02627-CMA, 2016 U.S. Dist. LEXIS 155460, at *17 (D. Colo. Nov. 4, 2016) ("possibility of [a social media] account termination, which could significantly hamper personal and business interests and hamstring political organizing via social media during a critical phase of the election," constitutes "injury").

---

[1] *See* Verified First Amended Complaint (hereafter "FAC") ¶¶ 1-10. "A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011); *accord*, *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("verified complaint . . . may afford the basis for a preliminary injunction"); WRIGHT & MILLER, 11A FED. PRAC. & PROC. CIV. § 2949 (3d ed. 2020) ("pleadings may be considered" in support of injunction "if they have been verified").

[2] *See, e.g.*, *Bernahl v. Eversheds Sutherland Ltd.*, No. 23-cv-00411-PCP, 2023 U.S. Dist. LEXIS 184920, at *5 (N.D. Cal. Oct. 13, 2023) ("unrebutted declarations establish[ed]" fact stated therein); *Shansby v. Edrington*, No. 22-cv-06907-JSC, 2023 U.S. Dist. LEXIS 135505, at *9 (N.D. Cal. Aug. 3, 2023) (same).

On this preliminary injunction motion, Plaintiffs needed only to show "serious issues going to the merits" or a "likelihood of success." Those standards are now in the rearview mirror. Defendants have in essence admitted they are violating Section 11(b) on a massive scale.

Apparently recognizing how weak they are on the merits, Defendants toss out a kitchen sink of non-merits arguments and farfetched defenses. Plaintiffs address these arguments in the order in which they are made, showing that every one of them misstates or ignores the law.

## ARGUMENT

I. **Defendants Cannot Hide Behind the First Amendment.**

Defendants begin by claiming that Plaintiffs' "request for an injunction would ... infringe on Defendants' First Amendment rights." (ECF No. 35 at 1.) Nonsense. Threats and intimidation violating Section 11(b) are not protected by the First Amendment. *See, e.g.*, *Krabach v. King Cnty*, No. 2:22-cv-1252-BJR, 2023 U.S. Dist. LEXIS 191870, at *18 (W.D. Wash. Oct. 25, 2023) (rejecting First Amendment defense against Section 11(b) claim) ("The problem with Plaintiff's argument is that [the] Ninth Circuit has unequivocally stated that speech constituting intimidation may be regulated by a state 'without running afoul of the First Amendment.'") (quoting *United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1266 (9th Cir. 2012)); *Nat'l Coalition on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 476 (S.D.N.Y. 2020) (*Wohl I*) (granting preliminary injunction based on violation of Section 11(b)) ("the First Amendment [does not] prohibit[] the government from restricting speech that communicates threats of nonviolent or nonbodily harm").[3] Defendants are of course entitled to use their

---

[3] *See also Nat'l Coalition on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 118-23 (S.D.N.Y. 2023) (*Wohl II*) (granting summary judgment) (reaffirming in thorough discussion that communications constituting threats or intimidation in violation of Voting Rights Act or Section 1985(3) are not protected by First Amendment).

3

platforms to express any views they like. But once this Court's determines that Defendants are likely violating Section 11(b) and/or Section 1985(3), "Defendants' First Amendment defense fails." *Wohl II*, 661 F. Supp. 3d at 123.

II. **The Equitable Factors Are Established as a Matter of Law**.

Next, Defendants contend (ECF No. 35 at 2) that Plaintiffs have failed to show that the equitable factors—irreparable harm, balance of equities, and public interest—favor them. But as Plaintiffs pointed out in their opening brief, all such factors are established as a matter of law where (as here) plaintiffs raise a "colorable" First Amendment claim. *CTIA v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019) (irreparable harm); *American Bev. Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (balance of equities and public interest); ECF 34 at 21. And the same rule applies to statutory claims where (again, as here) the statutes in question protect First Amendment interests:

> [T]he Ninth Circuit has held that "a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." Because RLUIPA ***expands on the First Amendment's protection of religious beliefs, this same reasoning applies to Pasaye's statutory claim.***

*Pasaye v. Dzurenda*, 375 F. Supp. 3d 1159, 1171 (D. Nev. 2019) (emphasis added) (citation omitted); *see also Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 U.S. App. LEXIS 4347 at *18-21 (5th Cir. Feb. 17, 2022) (recognizing that equitable factors are established as matter of law in First Amendment context and holding same true of statutory claims where statute protects First Amendment interests).

In any event, the equities plainly favor Plaintiffs. It is now less than three months before the presidential election. As Plaintiffs state in their Verified Amended Complaint:

> 19.    Every additional day that Defendants continue to suppress support and advocacy

4

> for Mr. Kennedy in the modern public square causes grave, irreparable harm.
>
> 20.     Every additional day that Defendants continue to suppress support and advocacy for Mr. Kennedy deprives Mr. Kennedy of an opportunity to present his views to the American people, and deprives American voters of their right to speak freely about the most important event in our democracy—the election of the President.

(ECF No. 28 at ¶¶ 19-20.) Ensuring the freedom of political advocacy during a presidential election manifestly advances the public interest, whereas Defendants can claim no legitimate interest either in blocking content that does not violate their terms of service or in preventing users from expressing lawful support for a presidential candidate.

### III.    **Defendants' Statutory Defenses Are Baseless.**

With respect to Plaintiffs' statutory claims, the unrebutted facts now before the Court show much more than "serious issues going to the merits" and "likelihood of success." As stated above, the undisputed facts establish on their face a violation of Section 11(b) of the Voting Rights Act.  Defendants are literally threatening people—with account suspension and termination—who urge other people to vote for Mr. Kennedy. That is exactly what Section 11(b) forbids. 52 U.S.C. § 10307(b) (unlawful to "threaten . . . any person for urging . . . any person to vote"). Against this evident statutory liability, Defendants launch a grab-bag of defenses. All are baseless.

#### A.    **Section 11(b) does not require intent**

Defendants assert—without citing a single case so holding—that "[t]o state a claim under" Section 11(b), "Plaintiffs must demonstrate that … Meta had a ***subjective intent*** that its editorial decisions would threaten, intimidate, and coerce users for urging others to vote." ECF 34 at 17 (original emphasis). Not so. *See, e.g.*, *Ariz. Alliance for Retired Americans. v. Clean Elections USA*, 638 F. Supp. 3d 1033, 1041 (D. Ariz. 2022) (Section 11(b) violated "regardless

5

of whether defendants acted with the specific intent of intimidating or threatening voters"); *League of United Latin Am. Citizens v. Pub. Int. Legal Found.*, No. 18-cv-423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018) (no "showing of specific intent . . . is required under [Section] 11(b)"); *Wohl II*, 661 F. Supp. 3d at 116 ("no requirement of intent"); *Daschle v. Thune*, No. 04-cv5 Case 1:22-cv-00581-CNS-NRN, ECF No. 6 (D.S.D. Nov. 2, 2004) (holding irrelevant "[w]hether the intimidation was intended or simply the result of excessive zeal"). As stated in *Wohl II*:

> That no intent need be shown is evident not only in the statutory text but also in the VRA's legislative history. Congress omitted the phrase "for the purpose of" to broaden the reach of the VRA. And in the House Report, then-Attorney General Nicholas Katzenbach testified that excluding a *mens rea* requirement was part of the design of the VRA [stating] that "no subjective 'purpose' need be shown . . . in order to prove intimidation under [Section 11(b)]. Rather, defendants would be deemed to intend the natural consequences of their acts."

661 F. Supp. 3d at 116 (citations omitted).[4]

B.  **Defendants' standing arguments are frivolous**.

Next, Defendants half-heartedly contest Plaintiffs' standing for their statutory claims, asserting that "only Plaintiff Reed Kraus has statutory standing" under Section 11(b) and Section 1985(3). (ECF 35 at 17, 23.) This is error: Plaintiffs Kennedy and AV24 also have standing

---

[4] With no case holding that Section 11(b) requires intent, Defendants instead (*see* ECF No. 35 at 17) cite *Counterman v. Colorado*, 600 U.S. 66 (2023), involving a criminal prosecution for infliction of emotional distress. The *Counterman* Court held that the First Amendment required the state to prove some level of "mens rea"—and not intent, but "recklessness." *See id*. at 73. Recklessness "involves insufficient concern with risk," and does not require "purpose" or even "awareness" of "harm." *Id*. at 79. Thus even if *Counterman* applied here, its mens rea requirement would be satisfied, because Defendants are acting with "insufficient concern" for the "risk" that they are intimidating users who seek to express lawful support for Mr. Kennedy. But it is doubtful that *Counterman* applies. *See Fair Fight Inc. v. True the Vote*, No. 2:20-CV-00302-SCJ, 2024 U.S. Dist. LEXIS 22, at *133 n.77 (N.D. Ga. Jan. 2, 2024) (*Counterman* "required a *mens rea* of at least recklessness for **criminal** prosecutions") (emphasis added).

6

under both statutes.[5] But in any event, Defendants have not here stated a defense or even an argument, because they are conceding Plaintiff Reed Kraus's standing, and ***only a single plaintiff need have standing***: "If at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023). *See Save the Bull Trout v. Williams*, 51 F.4th 1101, 1106 n.2 (9th Cir. 2022) ("***in an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing***") (citation omitted) (emphasis added).

      C.      **The intracorporate conspiracy rule does not apply**.

Defendants contend they are immune from Section 1985(3) liability under antitrust's "intracorporate conspiracy" rule. (ECF 34 at 20-21.) But the Ninth Circuit has never held that the intracorporate conspiracy rule applies to Section 1985(3) claims, and this Court, in carefully reasoned opinions, has in several cases expressly held it inapplicable. *See, e.g.*, *Bey v. City of Oakland*, No. 14-cv-01626-JSC, 2015 U.S. Dist. LEXIS 167685, at *44-45 (N.D. Cal. Dec. 15, 2015); *Rashdan v. Geissberger*, No. 10-00634 SBA, 2011 U.S. Dist. LEXIS 4792, at *19 (N.D. Cal. Jan. 14, 2011); *O. H. v. Oakland Unified Sch. Dist.*, No. C-99-5123 JCS, 2000 U.S. Dist. LEXIS 21725, at *13-27 (N.D. Cal. Apr. 17, 2000); *Washington v. Duty Free Shoppers*, 696 F. Supp. 1323, 1326 (N.D. Cal. 1988) (Orrick, J.).

---

[5] Section 11(b) standing does not extend only to "recipient[s] of … allegedly intimidating … communications," as Defendants suggest (without citation to a single case so holding). (ECF No. 35 at 17.) Rather, it extends to anyone in the statute's "zone of interests." *Krabach*, 2023 U.S. Dist. LEXIS 191870, at *9. Mr. Kennedy, as the candidate injured by Defendants' conduct, is obviously within that zone of interests, and so is AV24, as an organization seeking to promote Mr. Kennedy's candidacy. *See id.* (upholding Section 11(b) standing for county officials). As to Section 1985(3), Defendants argue (again without case authority) that standing is limited to "citizens who are able to vote." (ECF No. 35 at 22.) Even if true, that would include Mr. Kennedy, but Defendants are simply mistaken. The statute creates a right of action for any "person" "injured in his person or property" "by an act in furtherance" of a Section 1985 conspiracy. 42 U.S.C. § 1985(3). As explained in Plaintiffs' opening brief, both Mr. Kennedy and AV242 have been so injured. (ECF No. 29 at 20-21.)

7

Outside the antitrust context, the Ninth Circuit has firmly rejected across-the-board applicability of the intracorporate conspiracy rule because it would "effectively insulate all corporations from liability for conspiracies involving only employees acting on behalf of that corporation." *United States v. Hughes Aircraft Co.*, 20 F.3d 974, 979 (9th Cir. 1994). Instead, applicability of the rule depends on the goals served by the statute at issue. *Webster v. Omnitrition Int'l*, 79 F.3d 776, 787 (9th Cir. 1996) (rejecting intracorporate conspiracy rule in civil RICO case). Where "intracorporate conspiracies would threaten [the statute's] goals," the rule does not apply. *Id*. As this case demonstrates, an intracorporate conspiracy—potentially stifling the advocacy of tens of millions of citizens—is a greater threat to free electoral advocacy than any purely individual conspiracy could be. The intracorporate conspiracy rule makes no sense as applied to Section 1985(3), which was originally part of the Ku Klux Act of 1871; it is inconceivable that if the Ku Klux Klan had only incorporated, its members would have been immune from liability.[6]

D. **Defendants have engaged in threats and intimidation.**

Defendants argue that their conduct does not constitute threat or intimidation. (ECF 35 at 18, 22.) On this point, it is important to distinguish Section 11(b) and Section 1985(3). Under Section 11(b), Defendants are clearly engaging in threats and intimidation; under Section 1985(3), no showing of threats or intimidation is required.

As Defendants concede, the test for "threats" and "intimidation" under Section 11(b) is

---

[6] Defendants suggest that they are immune from conspiracy liability because Plaintiffs have not alleged or shown Defendants ***knew*** that their conduct is unlawful. (*See* ECF No. 35 at 21.) But it's hornbook law that a "civil conspiracy" claim "does not require proof that [the defendants] knew that the [conduct to which they agreed] was unlawful." *Williams v. Big Picture Loans, LLC*, 693 F. Supp. 3d 610, 633-34 (E.D. Va. 2023).

8

broad: whether a "reasonable recipient familiar with the context … would interpret" Defendants' messages as "a threat of injury tending to deter individuals from exercising" their right to urge others to vote. *Wohl I*, 498 F. Supp. 3d at 477 (quoted by Defendants, ECF 35 at 18). "[U]nlawful threats or intimidation under [this] statute ***need not be violent or physical***, and may include communications inspiring fear of legal consequences, economic harm, dissemination of personal information," and other violations of intangible interests. *Wohl II*, 661 F. Supp. 3d at 116 (emphasis added); *see also, e.g.*, *Krabach*, 2023 U.S. Dist. LEXIS 191870, at *17 ("[t]he injury ***does not need to be one of violence or bodily harm***") (emphasis added).

      It is well established that a suspension or termination of a social media account, especially "during the critical phase of an election," is a legally cognizable "injury." *Hill v. Williams*, No. 16-cv-02627-CMA, 2016 U.S. Dist. LEXIS 155460, at *17 (D. Colo. Nov. 4, 2016) ("possibility of [a social media] account termination, which could significantly hamper personal and business interests and hamstring political organizing via social media during a critical phase of the election," constituted "injury"); *see also, e.g.*, *Safex Found., Inc. v. Safeth, Ltd.*, 531 F. Supp. 3d 285, 314 (D.D.C. 2021) ("suspension of plaintiffs' social media accounts," causing reputational and business harm, constituted "irreparable injury"). Indeed, because social media accounts are users' property, *see hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 995 (9th Cir. 2019) ("users retain ownership" over their social media accounts), Defendants warnings meet the classic definition of a threat. *See United States v. Taylor*, 596 U.S. 845, 854-55 (2022). ("[T]he word 'threat' and its cognates usually denote '[a] communicated intent to inflict physical or other harm on any person ***or on property***.'") (emphasis added).

      Defendants try to whitewash their unlawful threats by describing them as the "unremarkable" "implementation of [Meta's] ***agreed-upon*** content-moderation policies." (ECF

No. 35 at 18 (emphasis added.) On the contrary, the unrebutted evidence is that Defendants are blocking speech (posts such as "VOTE KENNEDY!") that cannot remotely be deemed in violation of any Meta terms of service.  Defendants assert that *Who Is Bobby Kennedy* was algorithmically and reasonably mistaken for "spam," but nowhere in their brief or exhibits do Defendants show—or even claim—that their censorship of "VOTE KENNEDY!" content can be defended or explained in this way.  In other words, the unrebutted evidence establishes the likelihood that Defendants are enforcing (whether algorithmically or otherwise) ***Kennedy-specific censorship policies*** against non-violative content; Defendants have no legal or contractual right to block such content, while users have every legal and contractual right to post it.  Accordingly, Defendants are violating Section 11(b) on a massive scale as to innumerable Kennedy supporters[7] (and Mr. Kennedy and AV24 have standing to enjoin this conduct).[8]

---

[7] As to Plaintiff Reed Kraus, a declaration submitted by Defendants asserts that no "enforcement actions" were taken against her due to any content she posted containing the terms "RFK" or "Kennedy." (*See* ECF No. 35-3 (Def. Exh. B).) This is a surprising claim, given that Paragraph 5 of Reed Kraus's declaration relates that she lost approximately 40,000 followers overnight following a post about "Bobby's speech" in Philadelphia, Paragraph 6 relates that after another post supportive of Mr. Kennedy, she received a warning which stated, "Your account can't be shown to non-followers," and Paragraph 8 relates that after another such post, she was locked out of her account, and that after she was allowed back, there were new restrictions placed on the account. (ECF No. 30 ¶¶ 5, 6, 8.) Whatever else may be said about this case, these averments demonstrate that Plaintiff Reed Kraus has been materially adversely affected as a result of her posting positive information about Mr. Kennedy, and Defendants' carefully worded declaration does not exactly rebut any of this, because the posts in question may not have included the terms "RFK" or "Kennedy" and because the declaration doesn't define "enforcement actions." But the Court need not reach these issues; apart from Ms. Reed Kraus, the unrebutted VAC and Rasmussen Declaration establish that hundreds of other Facebook and Instagram users have also had their pro-RFK content blocked and have received warnings as a result.

[8] *See supra* note 5. Plaintiffs are *not* claiming, and Plaintiffs' arguments do *not* imply, that every website on the Internet must allow users to post electoral advocacy. But Meta's platforms, *whose terms of service forbid Facebook or Instagram from penalizing users for simply posting pro-Kennedy content*, cannot lawfully threaten users for posting such content.

As to Section 1985(3), the statute prohibits not only threats and intimidation, but also (independently) conspiracies to "injure any citizen in person or property on account of" such citizen's "support or advocacy" for a presidential candidate. 42 U.S.C. § 1985(3). Because social media accounts are the user's property, Defendants' threatened and actual account suspensions are injuries to property, and hence Defendants are violating the statute's plain language.[9]

IV. **Plaintiffs Have Shown a Likelihood of Success or Serious Issues Going to the Merits on their First Amendment Claim**

Defendants argue that Plaintiffs' First Amendment claim somehow does not raise serious issues going to the merits even though, in a separate case brought by Mr. Kennedy, a United States District Court has already held that federal government coercion and joint action turned Meta's censorship of speakers whom the government disfavored—***expressly including Mr. Kennedy***—into state action violating the First Amendment. *See Kennedy v. Biden*, No. 3:23-CV-00381, 2024 U.S. Dist. LEXIS 26751 (W.D. La. Feb. 14, 2024).

Defendants ask this Court to ignore *Kennedy v. Biden* because the Supreme Court, in a related case, reversed a preliminary injunction that had been issued against federal officials on similar First Amendment grounds. *See Murthy v. Missouri*, 144 S. Ct. 1972 (2024). But *Murthy* never reached the First Amendment merits; it reversed solely upon a finding that the plaintiffs in that case (to which Mr. Kennedy was not a party) lacked standing. And the High Court did not vacate the Fifth Circuit's opinion, which therefore retains precedential authority on the First

---

[9] Plaintiffs also believe Defendants are engaging in threats and intimidation under Section 1985(3), but the Court need not reach this issue, as to which there is competing case law. *Compare Gill v. Farm Bureau Life Insurance Co. of Missouri*, 906 F.2d 1265, 1269 (8th Cir. 1990) (suggesting that Section 1985(3), because of its Ku Klux Klan origins, only applies to threats of physical violence), *with Wohl I*, 498 F. Supp. 3d at 487 (holding that test for threats and intimidation under Section 1985(3) is same broad test that applies under Section 11(b) and does not require physical force).

11

Amendment merits. *See Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) (distinguishing between vacated opinions, which lose "precedential authority," and opinions merely reversed on other grounds, which retain it). In that still-precedential opinion, the Fifth Circuit expressly held that the Federal Government successfully pressured Facebook into censoring a group of twelve individuals including Mr. Kennedy (the so-called "Disinformation Dozen") in violation of the First Amendment. *See Missouri v. Biden*, 83 F.4th 350, 363 (5th Cir. 2023) (as a result of governmental pressure, "the platforms began taking down content and deplatforming users they had not previously targeted. For example, Facebook started removing information posted by the 'disinfo dozen' … despite earlier representations that those users were not in violation of their policies."). Given *Missouri v. Biden* and *Kennedy v. Biden*, Plaintiffs' First Amendment claims plainly raise serious issues going to the merits.[10]

      Defendants assert that even if Meta's censorship constituted state action in violation of the First Amendment, the "appropriate remedy … would be an injunction against the government," not the platforms. (ECF No. 35 at 10.) But this flies in the face of *Murthy*, which based its standing ruling in part on the fact that the plaintiffs there had sued the government, not the platforms. *Murthy*, 144 S. Ct. at 1978 ("the plaintiffs' theories of standing depend on the *platforms'* actions—yet the plaintiffs do not seek to enjoin the platforms from restricting any posts or accounts. Instead, they seek to enjoin the *Government agencies and officials*") (original emphasis). In essence, Defendants want to leave individuals injured by state-action social-media

---

[10] This express finding of White House-coerced censorship distinguishes the instant case from *Children's Health Defense v. Meta Platforms, Inc.*, No. 21-16210, 2024 U.S. App. LEXIS 20053 (9th Cir. Aug. 9, 2024), where the Court found that the evidence in the record (which did not include the evidence discovered and relied on in *Kennedy v. Biden* and *Missouri v. Biden*) failed to support a finding of coercion. *Id.* at *29-31.

12

censorship in a no-remedy Catch 22—unable to sue the government because they should have sued the platforms, and unable to sue the platforms because they should have sued the government. Ninth Circuit precedent does not allow that result. *See, e.g.*, *Carlin Communications Inc. v. Mountain States Tel. and Tel. Co.*, 827 F.2d 1291, 1296 (9th Cir. 1987) (affirming judgment of First Amendment violation in suit brought against private telephone company that cut off plaintiff's service due to coercive threats from state official).[11]

V.  **Section 230 Immunity Is Irrelevant to this Case**.

In their brief's last two pages, Defendants invoke Section 230 of the Communications Decency Act. (ECF No. 35 at 23-25.) There's a reason Defendants tack this argument on at the end of their brief. Section 230 immunity has nothing to do with this case. To begin with, Section 230 cannot offer a defense against a constitutional claim, and Defendants do not claim otherwise, limiting their Section 230 argument to Plaintiffs' "statutory claims". (ECF No. 35 at 23.) But Section 230 is inapplicable to Plaintiffs' statutory claims.

Defendants principally claim immunity under Section 230(c)(1), which states: "No provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). But Plaintiffs are not treating Defendants as the publisher or speaker of anyone else's content. Plaintiffs are suing because of the messages that ***Defendants themselves generated*** and

---

[11] Defendants mistakenly cite *Carlin* as support for their position (ECF No. 35 at 10) because the Court vacated a *permanent* injunction requiring the phone company to reinstate the plaintiff's pornographic service in perpetuity. *See Carlin*, 827 F.2d at 1293, 1297. That holding is inapposite here. Plaintiffs here seek *temporary* injunctive relief, and what's more, Plaintiffs are not trying to stop Defendants (even temporarily) from removing any speech or speakers that violate Meta's terms of service. Plaintiffs seek only to enjoin Defendants from censoring speech by or in support of Mr. Kennedy—speech ***not*** violating any Meta terms of service—for the duration of the election campaign.

13

disseminated to users—the unlawful threats of account suspension and termination that violate Section 11(b) and Section 1985(3). As Defendants are well aware, a social media platform cannot claim Section 230 immunity for content "that it creates itself, or is 'responsible, in whole or in part' for creating." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008). "By its plain terms, § 230(c)(1) cuts off liability only when a plaintiff's claim faults the defendant for information provided by third parties…. Thus, internet companies remain on the hook when they create or develop their own internet content." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021). Because Defendants' threatening messages are "their own internet content," there is no immunity.

Defendants' one-paragraph argument for immunity under § 230(c)(2) fares no better. (*See* ECF 35 at 25.) That provision offers immunity for "good faith" removals "of material that the provider … considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2). But "the ordinary meaning of 'otherwise objectionable,' as well as the context, history, and purpose of the Communications Decency Act all counsel against reading 'otherwise objectionable' to mean anything to which a content provider objects regardless of why it is objectionable." *Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 884 (N.D. Cal. 2015), *cited approvingly in Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1050 (9th Cir. 2019) (calling this holding from *Song Fi* "persuasive"). To fall within Section 230(c)(2), content must either bear some relationship to the categories preceding "otherwise objectionable" (i.e., "obscene," "lewd," "violent," "harassing," etc.) or at least be "objectionable in some objective way." *Id*. Needless to say, posts merely expressing support for a major political candidate are not "objectionable" in this way, and Defendants cannot claim in "good faith" that they find such posts objectionable—not when

Meta's express public promise to its users is, "We don't want to get in the way of open, public and democratic debate on Meta's platforms—especially in the context of elections in democratic societies like the United States." Meta, https://about.fb.com/news/2023/01/trump-facebook-instagram-account-suspension.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to issue an order enjoining Defendants to cease and desist their censorship of speech supporting, advocating for, or urging people to vote for, Mr. Kennedy.

Respectfully Submitted,

DATED: August 13, 2024

_____-*s*-_____
DEIRDRE L. GOLDFARB
California State Bar No. 239396
330 S. Spalding Dr., Apt 105
Beverly Hills, CA 90212-3612
Telephone: (310) 756-3164
E-mail: dgoldfarblaw@gmail.com
Attorney for Plaintiff AV24


_____-*s*-_____
JED RUBENFELD
NY Bar # 2214104
1031 Forest Rd.
New Haven, CT 06515
Telephone: (203) 432-7631
E-mail: jed.rubenfeld@yale.edu
Attorney for Plaintiffs American Values 2024
and Jessica Reed Kraus

15

_____*-s-*_____
RICHARD JAFFE, ESQ.
California State Bar No. 289362
428 J Street, 4th Floor
Sacramento, California 95814
Tel: 916-492-6038
Email: rickjaffeesquire@gmail.com
Attorney for Plaintiffs Robert F. Kennedy, Jr. and Jessica Reed Kraus

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 13, 2024, the above Reply Brief in Support of Plaintiffs' Motion for Preliminary Injunction was filed with this Court via the CM/ECF system, which will send notice of said filing to all counsel of record.

Dated: August 13, 2024

_____*-s-*_____
DEIRDRE L. GOLDFARB
California State Bar No. 239396
330 S. Spalding Dr., Apt 105
Beverly Hills, CA 90212-3612
Telephone: (310) 756-3164
E-mail: dgoldfarblaw@gmail.com
Attorney for Plaintiff AV24

17